IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-232-D

| | |
|---|---|
| STEVEN L. FRAZIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Steven Frazier ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings [DE-26], granting Defendant's Motion for Judgment on the Pleadings [DE-27], and affirming the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 8, 2009, alleging disability beginning April 12, 2000. (R. 163.) Claimant's Date Last Insured ("DLI") was June 20, 2006. (R. 14.) His claim was denied initially and upon reconsideration.

(R. 96–99, 101–04.) A hearing before the Administrative Law Judge ("ALJ") was held on June 21, 2011, at which Claimant was represented by counsel, and a witness and a vocational expert ("VE") appeared and testified. (R. 30.) On August 29, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 23.) On August 10, 2012, the Appeals Council denied Claimant's request for review. (R. 1–3.) Claimant then filed a complaint in this court seeking review of the now final administrative decision. (R. 7–10.)

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2012). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642. "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings

2

Case 4:12-cv-00232-D   Document 30   Filed 11/08/13   Page 2 of 12

and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy that the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's credibility; (2) improper evaluation of Claimant's treating physician's opinion; and (3) failure to make a disability determination for the period after Claimant's DLI. (Pl.'s Mem. Supp. Mot. J. Pleadings ("Pl.'s Mem.") [DE-25] at 1.)

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was not engaged in

3

substantial gainful employment prior to his DLI. (R. 16.) Next, the ALJ determined Claimant had the following severe impairments: lumbar strain/degenerative disc disease, hypertension, and obesity. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.)

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform light work subject to the following limitations: (1) a sit/stand option every thirty minutes; (2) never climbing ladders, ropes, or scaffolds; (3) only occasional climbing of ramps and stairs; (4) restroom access; and (5) limited to simple, routine, repetitive tasks. (R. 17–18.) In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 18–21.) At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a janitor, an assistant manager, or, as a component of the assistant manager, as a stock clerk. (R. 21.) Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the state and national economies. (R. 22.)

## II. Evidence in support of Claimant

At the time of Claimant's administrative hearing, Claimant was 55 years old, a high school graduate, and unemployed. (R. 33, 66.) He was last employed as a custodian with the Craven County School Board for approximately two to four years, where his duties included waxing and buffing floors, cleaning bathrooms and windows, dumping trash, mopping and sweeping floors, moving desks and chairs, raking the yard, and cutting hedges. (R. 33, 74, 176, 203.) Claimant's

4

past work experience also includes various managerial positions, in which his duties included stocking shelves. (R. 194–99.)

Claimant asserts numerous medical conditions in support of his disability claim and his inability to work full time. He complains of serious pain in his lower back, right leg, left knee, left shoulder, and neck. (R. 34.) He testified to receiving Botox injections into his back for pain. *Id.* He was also prescribed medication for the pain but discontinued use of the pain medication after suffering hallucinations as a result of the medication. *Id.* Claimant states he cannot stand for more than fifteen minutes at a time, can only walk for a distance of twenty to thirty yards, cannot lift a gallon of milk or carry a bag of groceries, sleeps only two to three hours at a time, and has very painful headaches for which he has to lie down in a quiet, dark room for thirty minutes to an hour. (R. 38.) Claimant testified that he is unable to work due to pain associated with his back, leg, shoulder, and neck. (R. 34.)

### III. Vocational Expert's Testimony

Ashley Johnson testified as a VE at the administrative hearing. (R. 55–63.) After the VE's testimony regarding Claimant's past work experience (R. 56), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed the following hypothetical question:

> Assuming an individual of the same age, education and work experience as the claimant, this person is limited to light exertion; could lift 20 pounds occasionally, 10 pounds frequently. This person could sit, stand or walk for six hours cumulatively during an eight-hour workday, but at 30 minute maximum a sit/stand option. No ladders, ropes, scaffolds; occasional ramps and stairs, occasional other postural activities. Would need restroom access in the work area, and would be limited to simple, repetitive tasks, unskilled work. So a limited range of light exertion. Could such an individual person [perform] in any of the claimant's past work?

5

(R. 56–57.) The VE responded in the negative. (R. 57.) The ALJ then asked if there were other jobs that the hypothetical claimant could perform in the national economy. (R. 57.) The VE responded in the affirmative and noted that such a claimant could perform the following jobs: small part assembler (DOT 706.684-022, light work, unskilled); storage facility rental clerk (DOT 295.367-026, light work, unskilled); and furniture rental consultant (DOT 295.357-018, light work, unskilled). *Id.* The VE concluded that those jobs exist in significant numbers in both the state and national economies. *Id.*

## DISCUSSION

### I. Claimant's Credibility

Claimant contends that substantial evidence does not support the ALJ's findings that his allegations of pain and functional restrictions were not fully credible. (Pl.'s Mem. at 1.) The undersigned disagrees.

In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig v. Chater*, 76 F.3d 585, 594–95 (4th Cir. 1996). Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 (July 2, 1996). When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C.

6

2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

The ALJ here first examined whether Claimant's medically determinable impairments could reasonably cause Claimant's symptoms. (R. 18.) Claimant had reported chronic back pain that prevented him from working. (R. 19.) The objective medical evidence showed that Claimant had at different times been diagnosed with: (1) scoliosis in his lumbar spine and mild degenerative lipping; (2) slight scoliosis and mild degenerative changes in his spine with possible annular tearing; and (3) intermittent high blood pressure. (R. 18–19.) The ALJ concluded that these impairments could reasonably be expected to cause the alleged symptoms. *Id.*

Next, the ALJ considered a wide range of evidence in order to evaluate the credibility of Claimant's statements concerning his pain and work capabilities. He took into account the following: information and medical evaluations from both Dr. Good and Dr. Reeg; testimony of Claimant and his wife; statements from Claimant's two daughters; and Claimant's medical records. (R. 19–21.) The ALJ stated the reasoning behind his adverse credibility determination, concluding that "claimant's allegations were not fully supported by the evidence of record." (R. 21.) He supported his reasoning by the following findings: (1) Claimant's x-rays did not reveal a condition that would cause Claimant's chronic pain, and Claimant's hypertension did not require medication; (2) there were gaps in treatment for Claimant's alleged back pain, and although Claimant could not afford regular treatment, there is no evidence that he took advantage of free- or low-income clinics; (3) Claimant described daily activities that were fairly limited, but the objective medical evidence does not support those statements; (4) Claimant's behavior suggested malingering during the functional capacity evaluation ("FCE"); and (5) at the appointment on

7

November 9, 2010, subsequent to Claimant's DLI, Claimant reported an ability to walk on a treadmill thirty minutes per day. (R. 20.)

The ALJ properly evaluated Claimant's credibility under the two-step process. He found that Claimant's symptoms could reasonably be caused by underlying medical conditions, but that Claimant's statements concerning those symptoms were inconsistent with objective medical evidence and Claimant's past statements. Specific reasons for the ALJ's finding on credibility are contained within his decision. Thus, the ALJ properly evaluated Claimant's credibility.

## II.     Dr. Good's Medical Opinion

Claimant also argues that the ALJ did not afford the expert medical opinion of Dr. Kevin Good the weight to which it was entitled. (Pl.'s Mem. at 11–10.) The undersigned disagrees.

Ordinarily, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2) (2013). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given to the treating physician's opinion by

8

applying the following factors: (1) the length of treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

In the present case, the ALJ reviewed Claimant's medical records produced by Dr. Good. (R. 19–20.) On August 10, 2000, Dr. Good examined Claimant, reporting that scans he took of Claimant's lumbar spine were unremarkable. (R. 19, 297.) When Claimant continued to report pain, Dr. Good prescribed Bupivacaine and Botox injections, which resulted in no or only temporary relief. (R. 19.) As of September 29, 2000, Dr. Good's records indicate that claimant had reached his maximum medical benefit, and Dr. Good rated Claimant at a 2% permanent partial impairment. (R. 19.) Claimant did not return to Dr. Good until January 18, 2002, when he reported chronic back pain. (R. 19.) At this evaluation, Dr. Good rated Claimant at 10% permanent partial impairment. (R. 19.) Dr. Good noted, however, that there was no change in Claimant's condition, that Claimant had already reached maximum medical improvement, and that there was "no objective evidence to support the claimant's allegations of pain." (R. 19, 293.)

The ALJ evaluated Dr. Good's opinion as a treating physician stating,

> I considered the opinion of the claimant's treating physician [Dr. Good] . . . . I give limited weight to these opinions because notes from the claimant's January 18, 2002 appointment indicate that there was no structural reason for the claimant's alleged pain and there were no objective finding [sic] to support his claims of pain. Moreover, notes indicate that the claimant's condition was unchanged from September 2000, which does not support Dr. Good's restriction of claimant [from light work] to sedentary work. Therefore, I give these opinions limited weight.

(R. 21.)

Given the existence of evidence that is inconsistent with Dr. Good's opinion, the ALJ was not required to give Dr. Good's opinion controlling weight, but possessed the discretion to decide how much weight should be given to Dr. Good's medical opinions. In his decision, the ALJ referred to Dr. Good's opinion and treatment notes and duly considered Dr. Good's opinion in light of the evidence. (R. 19, 21.) Further, the ALJ noted that, at an appointment on November 9, 2010, Claimant stated he was able to walk on a treadmill thirty minutes per day. (R. 20.)

In order to determine the weight of Dr. Good's opinion, the ALJ also considered the opinion of a second treating physician, Dr. Scot E. Reeg. Dr. Reeg noted that although Claimant reported constant pain, he was not taking any medications. (R. 19.) While Dr. Reeg reported that an MRI showed "slight scoliosis and some mild degenerative changes with a possible annular tear," he determined that Claimant had reached maximum medical improvement with a 5% permanent disability. (R. 19.) Dr. Reeg further recommended that an FCE be performed. (R. 19.) The FCE indicated that "in four out of four categories the claimant demonstrated behavior that was disproportionate to the actual functional loss caused by an impairment, which does not support his allegations of a disabling condition." (R. 19.) Following Claimant's FCE, Dr. Reeg cleared Claimant for medium work. The ALJ found Dr. Reeg's opinion to be supported by the evidence and, therefore, gave great weight to his opinion but, based on Claimant's testimony, further limited Claimant to light work. Given the substantial evidence inconsistent with Dr. Good's opinion regarding the severity of Claimant's condition, the ALJ appropriately credited Dr. Good's opinions in making his RFC determination.

10

## III. Post-DLI Disability Determination

In order to establish eligibility for social security benefits, a claimant must show that he became disabled before his DLI. *Bird v. Astrue*, 699 F.3d 337, 340 (4th Cir. 2012). Thus, the ALJ must determine whether the claimant was disabled before the DLI.

Although a claimant must prove the existence of a disability prior to the date last insured, medical evidence produced after that date may nevertheless be admissible. In *Bird v. Astrue*, the Fourth Circuit held that "an ALJ must give retrospective consideration to medical evidence created after a claimant's last insured date when such evidence may be 'reflective of a possible earlier and progressive degeneration.'" 699 F.3d at 345. "[R]etrospective consideration of evidence is appropriate when the 'record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." *Id.* (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)).

While a finding that Claimant was disabled after his DLI may be considered in determining whether Claimant was disabled prior to his DLI, it is not required that the ALJ make a disability determination for the period after Claimant's DLI. In this case, there was ample pre-DLI evidence from which the ALJ could make his disability determination. He had the medical opinions from two doctors who treated Claimant before his DLI. There were x-rays and MRIs taken of Claimant's spine; he was prescribed various pain medications; Claimant testified as to the prescribed time period before his DLI; Claimant's wife testified concerning Claimant's impairment during the relevant time period; and Claimant's daughters wrote statements that were taken into consideration by the ALJ. Further, the ALJ took into account medical records and opinions that were generated after Claimant's DLI. Those records indicated that Claimant had full range of motion with both of his arms and shoulders, and Claimant even told the physician that

11

he walked on a treadmill for thirty minutes every day. The ALJ also considered the evidence of Claimant's post-DLI escalation of hypertension. As noted by the ALJ, however, the medical evidence shows that Claimant had been diagnosed with hypertension prior to his DLI but had not been taking any hypertension medications. The ALJ found that Claimant's hypertension constitutes a severe impairment but, as of the date of hearing, was well controlled.

The ALJ gave due consideration to both the pre- and post-DLI medical evidence. There being substantial evidence to support the ALJ's findings and the ALJ's decision having been reached by application of correct legal standards, the undersigned determines that the ALJ's decision denying Claimant benefits should be upheld.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-26] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-27] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 8th day of November 2013.

Kimberly A. Swank
KIMBERLY A. SWANK
United States Magistrate Judge